# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Chester C. Graham,

    Plaintiff,

v.

National Web Design LLC,

    Defendant.

Case No. 20-cv-1575 (KMM/BRT)

**ORDER**

This matter is before the Court on Chester C. Graham's Motion for Default Judgment. [ECF 10]. For the reasons that follow, the motion is denied without prejudice.

## I.   BACKGROUND

Mr. Graham filed his complaint on July 14, 2020, along with an application to proceed *in forma pauperis*. His IFP application was granted and Mr. Graham returned a completed form to have the U.S. Marshals Service complete service of process on National Web Design LLC ("NWD").[1] On August 5, 2020, the Clerk of Court sent a notice of lawsuit and request for waiver of service to NWD at the address Mr. Graham provided. No executed waiver was returned by NWD, and United States Magistrate Judge Becky R. Thorson issued an Order directing the Clerk's Office to issue a summons and for the U.S. Marshals to serve NWD. [Order (Nov. 24, 2020), ECF 6].

---

[1] As explained in more detail below, Mr. Graham claims that NWD violated the Telephone Consumer Protection Act on more than ten occasions during the first half of 2020 by repeatedly placing telemarketing calls to his cellphone using an autodialing system.

1

On February 10, 2021, the summons was returned executed. The February 10th Process Receipt and Return indicates that a Deputy U.S. Marshal handed a copy of the summons and complaint to Ashley Haroda, a legal assistant for Dion Custis, at the address Mr. Graham provided for NWD's registered agent for service of process. NWD's agent for process is a company known as Registered Agents of Wyoming, LLC. [Proof of Service, ECF 8].

NWD did not file an answer or otherwise respond to the complaint within 21 days as required by Rule 12(a) of the Federal Rules of Civil Procedure. Indeed, no response was forthcoming for several months. On July 21, 2021, Judge Thorson issued an Order requiring NWD to either appear and defend the case, and if NWD did not do so, directing Mr. Graham to apply for entry of default. [Order (Jul. 21, 2021), ECF 9]. In addition, Judge Thorson directed the Clerk of Court to mail a copy of her Order, the summons and complaint, and a request for waiver of service to NWD at the following address: National Web Design, LLC, c/o Registered Agents of Wyoming, 400 E. 20th Street, Cheyenne, Wyoming 82001. [*Id.*] This address is the same address Mr. Graham provided to the Marshals for NWD's registered agent. [Proof of Service].

On July 31, 2021, Mr. Graham filed a letter requesting entry of default judgment and enclosed a document entitled "Affidavit Default Judgment." [Default Mot., ECF 10; Pl.'s First Default Aff., ECF 10-1]. Mr. Graham seeks entry of default judgment in the amount of $24,000. Separately, on August 1, 2021, Mr. Graham sent a "Request for Default" and an "Affidavit in Support of Request for Default and Affidavit of Amount Due." [Request for Default, ECF 11; Pl.'s Second Default Aff., ECF 12]. In support of his request for default

judgment, Mr. Graham supplied a copy of the Process Receipt and Return dated February 10, 2021, indicating that Registered Agents of Wyoming had been personally served by a Deputy U.S. Marshal. However, on August 13, 2021, a text entry on the docket indicates that the documents which had been mailed to Registered Agents of Wyoming pursuant to Judge Thorson's July 21st Order were returned undeliverable.

On November 2, 2021, the Clerk of Court sent Mr. Graham a letter informing him that a default judgment could not be entered until he files an application for entry of default and the Clerk enters a default. [Clerk's Letter (Nov. 2, 2021), ECF 13]. On November 8, 2021, Mr. Graham filed an application for entry of default and a supporting affidavit. [Default Application, ECF 15; Pl.'s Third Default Aff., ECF 16]. In this affidavit, Mr. Graham again referenced the February 10, 2021 process receipt and return, suggesting that NWD had been served. [ECF 16]. The Clerk entered default against National Web Design LLC on November 12, 2021.

## II. DISCUSSION

Mr. Graham's motion or default judgment is denied without prejudice for the reasons explained below. However, this disposition does not foreclose Mr. Graham from re-filing his motion in the future and making an appropriate showing to indicate that he is entitled to a default judgment.

### A. Premature Motion

First, Mr. Graham's motion was filed prematurely. The entry of default and default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. The clerk is required to enter default when a party fails to defend against another party's claims, and that

3

failure is shown by affidavit. Fed. R. Civ. P. 55(a). Such an entry of default is a prerequisite to obtaining a default judgment. *E.g.*, *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) (explaining that "entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)"). Mr. Graham filed his motion for default judgment on August 2, 2021, but the Clerk of Court did not enter default as to NWD until November 12, 2021. Therefore, Mr. Graham's motion for default judgment was premature. *See Precinct, Inc. v. MWS, LLC*, No. 4:13CV2391 SNLJ, 2014 WL 3734276, at *1 (E.D. Mo. July 28, 2014) ("Plaintiff's motion for default judgment must be denied on the basis that an entry of default from the Clerk of the Court pursuant to Rule 55(a) is a prerequisite to and must precede the grant of a default judgment under Rule 55(b).").

This procedural error alone might not require denial of the motion, particularly because default has now been entered. However, other flaws exist with Mr. Graham's motion, and the Court finds it most efficient to address them all at once so that, if Mr. Graham chooses to re-file his motion, he can correct them all.

**B. Failure to File Memorandum of Law**

Although the Court recognizes Mr. Graham is pursuing this action *pro se* and is not an attorney, he has failed to comply in a meaningful way with Local Rule 7.1(c), which governs civil motion practice in this District. Specifically, Mr. Graham did not file a memorandum of law in support of his motion for default judgment. D. Minn. LR 7.1(c)(1). Absent a memorandum of law, Mr. Graham essentially asks the Court to review his motion and affidavits, and any other papers of record that may be relevant to his request for default judgment, and determine why Mr. Graham believes he is entitled to default judgment against

4

NWD for $24,000. It is Mr. Graham's responsibility, not the Court's, to present an argument in favor of entry of default judgment. If Mr. Graham seeks to file a renewed motion, it must be accompanied by a memorandum of law supporting his request for default judgment.

### C. Uncertainty as to Service of Process

Third, and most importantly, the Court cannot conclude from the record that it has acquired jurisdiction over NWD through proper service of process. "[T]he entry of default by the Clerk does not entitle the non-defaulting party to a default judgment as a matter of right." *United States v. $345,510.00 in U.S. Currency*, No. 01-cv-497 (PAM/JGL), 2002 WL 22040, at *2 (D. Minn. Jan. 2, 2002) (citations omitted). "To enter a default judgment, a court must have jurisdiction over the defaulting party, and the defendant must have been made party to the action by proper service of process." *Burns v. Office of Attorney Gen.*, No. 08-cv-858 (PJS/RLE), 2007 WL 2247600, at *5 (D. Minn. Aug. 2, 2007); *see also Barry v. Islamic Republic of Iran*, 410 F. Supp. 3d 161, 171 (D.D.C. 2019) (explaining that a court must "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant") (internal quotation marks omitted).

Under Rule 4 of the Federal Rules of Civil Procedure, an unincorporated association may be served by delivering a copy of the summons and complaint to an officer, a managing agent or general agent, or any other agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(h)(1)(B). Such a business may also be served by following state law for service on an individual in the state where the district is located or where service is made. Fed. R. Civ. P. 4(h)(1)(A). Minnesota is the state where this District is located, and Minnesota law allows a limited liability company to be served by delivering the

5

summons and complaint to the company's registered agent, a member, or a managing agent. Minn. Stat. § 322C.0116, subd. 1; Minn. R. Civ. P. 4.03(b). Wyoming is the state where service on NWD was purportedly made. "Wyoming's Rules of Civil Procedure provide service upon a partnership or other unincorporated association shall be made '(A) by delivery of copies to one or more of the partners or associates, or a *managing or general agent* thereof, or *agent for process*, or (B) by leaving same at the usual place of business of such defendant with any employee then in charge thereof." *Carter v. Genesis Alkali, LLC*, No. 20-CV-216, 2021 WL 973448, at *2 (D. Wyo. Feb. 16, 2021) (quoting Wyo. R. Civ. P. 4(h)(1)) (emphasis added in *Carter*).

  Looking at these sources, the question is whether the delivery of the summons and complaint on February 10, 2021 was effective service of process on NWD under the Federal Rules or either state's law. At best, the record is inconclusive as to the answer. Jon D. Goodman, a Deputy Marshal in the District of Wyoming completed the Proof of Service form. Deputy Goodman states that he handed the summons and complaint to Ashley Harada. Ms. Harada is a Legal Assistant for attorney Dion Custis. And Deputy Goodman indicates that Dion Custis is designated by law to accept service of process on behalf of NWD's registered agent—Registered Agents of Wyoming ("RAW"). [Proof of Service at 3].

According to documents available on the Wyoming Secretary of State's website,[2] RAW was the registered agent for NWD, which is consistent with the information that Mr. Graham provided on Form USM-285. However, RAW notified NWD it was resigning as NWD's registered agent for process on February 2, 2021, eight days before the summons and complaint were handed to Ms. Harada. *WY Sec'y NWD*, History, RA Resignation (June 16, 2021). This might indicate that RAW was no longer NWD's agent for process at the time Deputy Goodman completed service. Unfortunately, the unanswered questions do not stop there. RAW's resignation notice indicates that its resignation becomes effective immediately upon filing of the statement with the Wyoming Secretary of State, which appears to have occurred on June 16, 2021. *Id.* at 1, ¶ 4. This might suggest that RAW had not effectively resigned until after NWD was purportedly served through Ms. Harada. In any event, it is far from clear whether service of process was effective under these circumstances. Mr. Graham's default judgment motion and related filings do nothing to resolve these questions.

Even if RAW's February 2, 2021 resignation as NWD's agent for process did not undermine service because the resignation did not become effective until months later, there is a more fundamental problem with the proof of service in this case. There is reason to doubt that handing the summons and complaint to Ms. Harada was effective service on

---

[2] Wyoming Secretary of State Business Center, Detail for National Web Design LLC, https://wyobiz.wyo.gov/Business/FilingDetails.aspx?eFNum=22921600702722119318212225101421413913124007112 6 (last visited Jan. 21, 2022) (hereafter "*WY Sec'y NWD*"). According to the Wyoming Secretary of State's website, NWD was administratively dissolved on April 11, 2021, due to delinquent taxes. It now lists NWD's address as 512 Robin Rd, Orem, UT 84097.

RAW at all. As noted, the Proof of Service represents that Ms. Harada is a Legal Assistant for attorney Dion Custis, and that Mr. Custis' law firm is authorized by law to accept service of process for RAW. According to publicly available documents, Dion J. Custis, P.C., shares an office address with RAW at 400 East 20th Street in Cheyenne, Wyoming. Dion J. Custis, P.C., appears to be the corporate name for Ms. Harada's employer.[3] But RAW does not identify Dion J. Custis, P.C., or Mr. Custis as its registered agent for service. In fact, RAW's registered agent is identified as InCorp Services, Inc., a business located at 1910 Thomes Ave in Cheyenne. Aside from the shared office address, nothing in the public records connects Dion J. Custis, P.C., or Mr. Custis to RAW.[4] Deputy Goodman's Proof of Service provides no insight into the averment that Mr. Custis or the corporation bearing his name is, in fact, designated by law to accept service of process on behalf of Registered Agents of Wyoming. If Ms. Harada lacked authority to accept process on RAW's behalf, then RAW never received a copy of the summons and complaint, and NWD was not properly served through its registered agent.

Because it is unclear whether service of process on NWD was effective in this case, the Court will not exercise its discretion to enter default judgment against NWD at this time.

---

[3]   Wyoming Secretary of State Business Center, Detail for Dion J. Custis P.C., https://wyobiz.wyo.gov/Business/FilingDetails.aspx?eFNum=21307521800015923724712007503708516201202304212 3 (last visited Jan. 21, 2022).

[4]   Wyoming Secretary of State Business Center, Detail for Registered Agents of Wyoming, LLC, https://wyobiz.wyo.gov/Business/FilingDetails.aspx?eFNum=20804007207623808725504200715115702201424617907 6 (last visited Jan. 21, 2022). The Initial Filing, Registered Agent Address Change forms, and Annual Reports available under the "History" tab at the link above do not suggest any connection between RAW and Mr. Curtis or his firm.

8

*Norsyn, Inc. v. Desai*, 351 F.3d 825, 830 (8th Cir. 2003) (concluding that the district court did not abuse its discretion in denying the plaintiff's motion for default judgment where the defendants were not properly served). Should Mr. Graham choose to refile his motion for default judgment, he must explain, in a reasoned memorandum of law, and with citation to applicable authority, why he believes that NWD was properly served. Alternatively, he must demonstrate that service of process was effectively accomplished at some point after Deputy Goodman delivered the summons and complaint to Ms. Harada. In the event that the Court ultimately determines that NWD has not received effective service of process, Mr. Graham is advised that the Court may determine there is good cause to set aside the Clerk's entry of default.

If, after reviewing this Order and conducting any additional investigation he deems appropriate, Mr. Graham concludes that service has not been effectively achieved, he must submit a request, in writing, for additional time to accomplish service on NWD. Mr. Graham may elect to submit a new Form USM-285 to have the U.S. Marshals Service make an additional attempt to serve NWD at an appropriate location. If Mr. Graham is unable to provide the U.S. Marshal Service with information that will allow it to effectively serve NWD within a reasonable time after the date of this Order, his case may be dismissed without prejudice for failure to prosecute. Fed. R. Civ. P. 4(m) (requiring a defendant to be served within 90 days after the complaint is filed, and if good cause is not shown for extending the time for service, requiring dismissal for failure to prosecute).

**D. Amount of Damages**

Finally, the record does not support a conclusion that Mr. Graham is entitled to a default judgment entered against NWD in the amount of $24,000. "When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 8181 (8th Cir. 2001). A claim is not for "a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default," and courts should hold an evidentiary hearing where necessary to make findings in support of a default judgment. *Stepehnson v. El-Batrawi*, 524 F.3d 907, 917 n.11 (8th Cir. 2008) (quoting *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1 (1st Cir. 2003)).[5]

Mr. Graham's complaint alleges that NWD violated of the Telephone Consumer Protection Act ("TCPA"), on ten separate occasions by using an automated dialer to place telemarketing calls to Mr. Graham's cellphone. Nine of these calls allegedly occurred after Mr. Graham's cell phone number was placed on the Federal Trade Commission's National Do Not Call Registry in March of 2020. And Mr. Graham alleges that he did not give prior express consent to NWD to make these calls. *Aquilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1005 (D. Minn. 2018) ("To state a claim under the TCPA, a plaintiff must allege that the defendant (1) called a cellular telephone number, (2) used an automatic

---

[5] Although Mr. Graham asserts that the amount due is for a "sum certain," [Pl.'s Second Default Aff. ¶ 4], the Court finds this is not the case and further proceedings or the submission of additional evidence is needed to support his claim as to the appropriate amount of damages.

10

telephone dialing system or an artificial or prerecorded voice to do so, and (3) lacked the plaintiff's prior express consent.").

The TCPA authorizes a private right of action for the recovery of actual monetary loss for a violation of § 227(b) or its implementing regulations, or to receive $500 in statutory damages for each violation, whichever is greater. 47 U.S.C. § 227(b)(3)(A)–(B). In a case where the court finds the defendant willfully or knowingly violated § 227(b), it has the discretion to increase the amount of the damages awarded up to three times what is available in actual or statutory damages. *Id.* § 227(b)(3). Mr. Graham seeks such treble damages for the ten alleged violations of the TCPA, totaling $15,000.

The record does not support a finding that $15,000 represents an appropriate damages award. In particular, the only way that Mr. Graham arrives at this number is by trebling statutory damages of $5,000, but the Court cannot determine from the allegations in the complaint or Mr. Graham's affidavits whether trebling of damages for any of the ten calls at issue is appropriate. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (finding the "bare assertion in Lary's complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true" and affirming district court's conclusion that the complaint was not eligible for treble damages); *Perrong v. All Star Chimney Solutions, Inc.*, No. 1:21-cv-10084-IT, 2021 WL 2322835, at *2 (D. Mass. June 7, 2021) ("Given the posture of the case, the thin record, and the absence of any request for a further hearing to determine the truth of the allegations of intent by evidence, the court cannot make a finding that All Star engaged in a willful or knowing violation of the law."); *Doyle v. JTT Funding, Inc.*, No. LA

CV18-06145 JAK (ASx), 2019 WL 13037025, at *12 (C.D. Cal. Dec. 2, 2019) (finding on a motion for default judgment that the plaintiff failed to provide a basis through allegations in the complaint or otherwise that enhanced statutory damages were appropriate absent some indication of prior TCPA violations and whether trebling damages was necessary to provide deterrence for future TCPA violations);.

Mr. Graham further alleges that on six separate occasions in 2020, he sent a letter to NWD requesting a copy of its policy regarding the FTC's Do Not Call Registry, but NWD never provided its policy. He asserts that each time NWD failed to send him a copy of its policy in response his letters, it violated 47 C.F.R. § 64.1200(d)(1),[6] which in turn, operates as a violation of § 227(b) of the TCPA, and entitles him to statutory damages. Mr. Graham also seeks treble damages for these violations, totaling $9,000. Although several courts have recognized a private right of action exists for violations of § 64.1200(d),[7] there is at least one potential problem with this claim. Mr. Graham has not presented any argument or citation to authority indicating that 47 C.F.R. § 64.1200(d)(1)'s requirement for production of a policy upon demand applies to the national do-not-call registry.

---

[6]   Section 64.1200 has been amended several times. The Court cites to the version that was effective from March 26, 2019 to October 13, 2020, which covers the time period when Mr. Graham alleges he made his demands for NWD's policy regarding the national do-not-call list. A new version of § 64.1200 is set to take effect on January 31, 2022, but changes to subsection (d) are delayed indefinitely. Limits on Exempted Calls Under the Telephone Consumer Protection Act of 1991, 86 FR 11443-01, 2021 WL 720188 (Feb. 25, 2021) ("The Commission will publish a document in the Federal Register announcing the effective date of these amendments.").

[7]   *See Hand v. Beach Enter. KC, LLC*, 465 F. Supp. 3d 1099, 1125 (W.D. Mo. 2020) (rejecting the defendants' argument that the plaintiff lacked a private right of action for a violation of 47 C.F.R. § 64.1200(d) and collecting cases).

Subsection (d) focuses on a telemarketer's own internal do-not-call list, while another subsection in the regulation addresses the national do-not-call registry. *Compare* 47 C.F.R. § 64.1200(d) (discussing telemarketers' maintenance of a list of persons who have asked not to be called by that entity), *with id.* § 64.1200(c) (concerning telemarketers' responsibilities with respect to the national do-not-call registry). Section 64.1200(d) prohibits entities from initiating a telemarketing call to a residential telephone subscriber unless the entity "has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that … entity." 47 C.F.R. § 64.1200(d). Telemarketers must "have a written policy, available upon demand, for maintaining a do-not-call list." *Id.* § 64.1200(d)(1).[8] Telemarketers *are* prohibited under the regulation from initiating telephone solicitations to residential telephone subscribers who have registered their phone numbers on the national do-not-call list. *See id.* § 64.1200(c)(2). And to avoid liability, telemarketers must create written procedures for complying with the national do-not-call registry rules. *Id.* § 64.1200(c)(2)(i)(A). However, subsection (c) does not include a requirement similar to that found in subsection (d)(1) that its written procedures regarding the national do-not-call rules be available upon demand.

Based on the language and structure of 47 C.F.R. §§ 64.1200(c) and (d), it is possible to read subsection (d)(1)'s requirement that telemarketers have a written policy "available upon demand for maintaining a do-not-call list" as applying only to the internal list discussed throughout subsection (d). It is also possible, though less straightforwardly so, to read the

---

[8]     Mr. Graham neither alleges that he demanded NWD's policy regarding its internal do-not-call list, nor does he allege that he asked NWD to place him on that list.

13

"available upon demand" language as applying to both the company's policy regarding the internal list and compliance with the national do-not-call rules. Cases discussing claims under §§ 64.1200(c) and (d)(1) differentiate between the national registry and an internal list, but do not always clarify whether telemarketers must have a written policy regarding the national registry available upon demand. *See Doyle*, 2019 WL 13037025, at *2–3, *9 (discussing the nature of the plaintiff's claims, distinguishing between the national do-not-call registry and the internal do-not-call list, finding violations of both subsection (c) and (d), but not addressing whether subsection (d)(1) applies to the national registry). One court's analysis, however, suggests that subsection (d)(1) claims for failure to provide a do-not-call policy are concerned with telemarketers' internal lists. *See Drew v. Lexington Consumer Advocacy, LLC*, 2016 WL 1559717, at *7 (N.D. Cal. Apr. 18, 2016) ("Mr. Drew alleges he sent Lexington a cease and desist/demand letter asking for its internal do not call policy, but never heard back. He necessarily did not receive a copy of its do-not-call policy because Lexington did not respond. Lexington therefore initiated a telemarketing call without an internal do-not-call policy available on demand in violation of § 64.1200(d)(1).").

For these reasons, even accepting the factual allegations of the complaint as true, it is not clear from the record that Mr. Graham is entitled to any relief for alleged violations of 47 C.F.R. § 64.1200(d)(1) where he made no request for NWD's policy regarding its internal do-not-call list. *See Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1069 (D. Minn. 2019) (explaining that "it must be determined whether the taken-as-true factual allegations of the complaint 'constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'") (quoting *Marshall v. Baggett*, 616 F.3d 849, 852

(8th Cir. 2010) (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)). In the absence of briefing or any reasoned argument from Mr. Graham regarding the viability of his claim, demonstrating that the requirements of § 64.1200(d)(1) apply to a telemarketer's written procedures regarding the national do-not-call registry, the Court cannot conclude, at this time, that Mr. Graham has alleged a legitimate cause of action.

### III. ORDER

Mr. Graham's motion for default judgment is **DENIED** without prejudice for the reasons stated above. If, despite the Court's observations in this Order, Mr. Graham believes that he is entitled to default judgment he is permitted to refile his motion. If he elects to pursue this course of action, he must file a memorandum of law in support of his motion. In that memorandum he should explain the reasons, if any, that he believes NWD has been effectively served; discuss any factual and legal basis for seeking treble damages against NWD; and cite to any legal authority suggesting that a telemarketer's failure to provide a copy of its policy regarding the national do-not-call registry is a violation of 47 C.F.R. § 64.1200(d)(1) and the TCPA.

Date: January 21, 2022

                                                  *s/Katherine Menendez*
                                                  Katherine Menendez
                                                  United States District Judge